IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHARLES NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15CV797 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Charles Nichols ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits in July 2010. (Tr. at 20, 262-79.)[1] In both claims, Plaintiff alleged a disability onset date of March 13, 2009. (Tr. at 96, 105, 264.) His applications were denied initially (Tr. at 94-113) and upon reconsideration (Tr. at 114-43).

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 193-94.) Plaintiff attended the subsequent video hearing on February 17, 2012, along with his attorney and an impartial vocational expert. (Tr. at 147.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 157.) However, on June 24, 2013, the Appeals Council vacated the hearing decision and remanded Plaintiff's case for further proceedings. (Tr. at 163-65.)[2] Accordingly, Plaintiff appeared and testified at a second hearing on November 6, 2013, this time accompanied by a non-attorney representative. (Tr. at 20.) At the second hearing, Plaintiff amended his alleged onset date to July 1, 2010. (Id.)

Following the latter hearing, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 31.) On July 31, 2015, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

---

[2] The Appeals Council remanded the case for further consideration of a determination by the North Carolina Department of Health and Human Services that Plaintiff was disabled as of July 1, 2010 for purposes of Medicaid. Plaintiff amended his alleged onset date to July 1, 2010 in light of that determination. After the subsequent hearing on remand, the ALJ gave that Medicaid determination "little weight" because "[t]here is no information regarding the medical basis of the award." However, further analysis of that issue may be required in light of the decision of the Court of Appeals for the Fourth Circuit in Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343-44 (4th Cir. 2012). See also Gaskins v. Colvin, No. 3:12–CV–81, 2013 WL 3148717, at *3 (N.D.W. Va. June 19, 2013) (holding that even if the evidence of the Medicaid decision is "conclusory," "the Social Security Administration's own internal policy interpretation rulings affirmatively require[ ] the ALJ to consider evidence of a disability decision by another governmental agency," and these regulations "do not limit the required review of other agency's disability determinations to cases where the decision is substantive" because "to the extent that Medicaid decisions employ the same standards as the Social Security Administration uses in disability determinations, such decisions are probative in situations such as the instant one where an agency has applied the same rules yet reached the opposite result from the Social Security Administration" (internal quotations, brackets, and citations omitted)). The Medicaid approval form notes that Plaintiff's Aid Program Category was MAD, which is the North Carolina Department of Health and Human Services program for Medicaid to the Disabled, a program of medical assistance for individuals under age 65 who meet Social Security's definition of disability. The approval covered the time period from July 1, 2010 through January 31, 2012, also at issue in this case. (Tr. at 385.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the

3

ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

4

determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease, sacroiliitis, and chronic pain syndrome; insulin dependent diabetes mellitus; mood disorder; and status post cerebrovascular accident." (Tr. at 23.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 23-24.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with additional restrictions to a sit/stand option, no ladder climbing, no concentrated exposure to hazards such as moving machinery or unprotected heights, and only occasional climbing of stairs, balancing, stooping, crouching, kneeling, or crawling. In terms of mental restrictions, the ALJ found Plaintiff "further limited to unskilled work and better working with things rather than people." (Tr. at 24.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 29.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 30.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

6

Plaintiff now argues that the ALJ erred in two respects. First, he contends that, at step three, the ALJ failed to properly evaluate his back impairment under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A (hereinafter "Listing 1.04A"). Second, he challenges the ALJ's failure to perform a function-by-function analysis in assessing his RFC. Because the Court finds that Plaintiff's contention regarding Listing 1.04A requires further consideration upon remand, the Court need not address the additional issues raised by Plaintiff at this time.

A.  Listing 1.04A

At step three of the sequential analysis, the ALJ did not explicitly consider the applicability of Listing 1.04A to the facts of Plaintiff's case. In fact, despite initially asserting that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 1.04, 9.00, 11.00, 20 CFR Part 404, Subpart P, Appendix 1," the ALJ limited his actual analysis of relevant listings to Plaintiff's mental impairments. (Tr. at 23-24.) Plaintiff now claims that the ALJ's failure to specifically discuss Listing 1.04A constitutes error.

Notably, an ALJ is not required to explicitly identify and discuss every possible listing; however, he is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may

7

prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir.2011)). However, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id. If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295.

In the present case, Defendant argues that Radford is inapplicable because Plaintiff "did not produce evidence to show that Listing 1.04A was satisfied." (Def.'s Br. [Doc. #12] at 5.) In particular, Defendant relies on the opinion of two state agency physicians, who, in November 3, 2010 and June 1, 2011, respectively, specifically considered the applicability of Listing 1.04, but instead concluded that Plaintiff could perform a limited range of light work. (Def.'s Br. at 6) (citing Tr. at 100-02, 124-27). Defendant also cites the medical records provided by Dr. Stephen M. David, the surgeon who performed Plaintiff's L3-4 decompression in February 2010. (Def.'s Br. at 6-7.) On July 29, 2010, Dr. David opined that Plaintiff had reached maximum medical improvement and released him to "full-time work with limited bending, stooping, twisting, lifting, pushing, [and] pulling [of] no more than 20 pounds," as well as no overhead work. (Tr. at 552.) Defendant contends that, because the RFC assessed in this case "fully accounted for Plaintiff's work-related limitations" as opined by Dr. David, "substantial evidence supports the ALJ's finding that Plaintiff's back complaints did not meet a listing." (Def.'s Br. at 7.) However, Defendant does not address the fact that

a few months later, Dr. David provided a subsequent determination that Plaintiff should remain out of work indefinitely. (Tr. at 1304.) Specifically, Plaintiff returned to see Dr. David with worsening back pain in early May 2011, was hospitalized for back pain a few weeks later in late May 2011 and was treated by Dr. David while hospitalized, and returned to see Dr. David again in June 2011 and August 2011. (Tr. at 1304-20.)[5] After the August 2011 examination, and review of the more recent imaging, Dr. David concluded that Plaintiff was "continuing to have symptomatic disc herniation" and should remain out of work "until further notice."[6] (Tr. at 1304-05.)

Moreover, the issue here, as in <u>Radford</u>, is not whether Plaintiff met Listing 1.04A. Rather, the relevant questions are (1) whether there was sufficient evidence in the record to trigger the potential applicability of Listing 1.04A, and (2) if so, whether the ALJ's explanation and analysis, as a whole, is sufficient to allow judicial review of the step three determination as to that Listing. In this case, the ALJ's decision clearly omits relevant evidence pertaining to Plaintiff's back impairment. In particular, the decision reflects little, if any, of the record evidence of Plaintiff's back condition post-dating the June 1, 2011 state agency opinion on which Defendant now relies. After a thorough review of the record, the Court finds that later

---

[5] Plaintiff filed an updated Disability Report in July 2011, reporting that his back pain had gradually worsened, that his vertebrae were "shifting" according to his doctor, and that he was now experiencing numbness in his right leg as a result of his back pain. (Tr. at 378-83.) However, the review by the state agency physicians only considered evidence from Dr. David through July 2010.

[6] In the ALJ's decision, with respect to Dr. David, the ALJ specifically stated that "[a]lthough the claimant testified that his doctor has not released him to return to work, the claimant has not returned to this doctor since he released the claimant to return to work with limitations in July 2010." (Tr. at 27.) However, this statement is incorrect, as the record is clear that Plaintiff actually did return to Dr. David a few months later in May 2011, and Dr. David subsequently concluded in August 2011 that Plaintiff should remain out of work until further notice. (Tr. at 1304-20.) Notably, the ALJ separately noted and rejected the later determination by Dr. David (Tr. at 29), but the ALJ did not reconcile this analysis with the earlier discussion.

records include "a fair amount of evidence" that Plaintiff satisfies the requirements of Listing 1.04A. Because the ALJ offered no explanation for the omission of this evidence or its impact on the listing analysis, remand is required under Radford.

A plaintiff meets Listing 1.04A only if he meets three requirements. He must first show that he suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. In the present case, Plaintiff's documented degenerative disc disease clearly met this requirement.

Second, he must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." Id. In this case, the results from a lumbar spine MRI performed on October 11, 2012 showed that:

> At L3-L4 there's been a laminotomy to the right, with a broad-based herniation asymmetric to the right creating moderate central canal narrowing with compression on the right L4 nerve root as it heads toward the lateral recess. There is high-grade narrowing of the right neural foramen with compression on the right L3 nerve root. Hypertrophy of the posterior elements contributes to the central canal narrowing and mass effect on the lateral thecal sac. . . . Impression: Transitional L5 vertebral body with postsurgical changes to the right at L3-L4. There is a right posterior lateral and foraminal herniation at L3-L4 effacing the right anterolateral thecal sac with mass effect and compression on both the right L3 and L4 nerve roots.

(Tr. at 1283-84.)[7] Plaintiff's later medical records in 2013 continue to note "multilevel degenerative disc disease" with "L3-L4 status post laminotomy with right disc herniation causing foraminal narrowing and compression of the right L3 nerve root with indentation of the anterolateral thecal sac" and with "L4-L5 with bilateral foraminal narrowing and

---

[7] Notably, the ALJ's decision does not address the October 2012 MRI at all.

compression of the right L4 nerve root," based on the October 2012 MRI and ongoing examinations and pain treatments. (Tr. at 1272, 1277-78.) In addition, an earlier May 2011 MRI also demonstrated "recurrent disc herniation with neurological impingement on the right side at L4-L5 where he had prior surgery." (Tr. at 1304.)

Third, he must show that he meets the additional requirements of paragraph A of the Listing:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Id. In his brief, Plaintiff identifies at least some evidence consistent with each of the criteria set out in section A of the listing. (See Pl.'s Br. [Doc. #9] at 6-8.) This includes complaints of "numbness, tingling, [and] pins and needles radiating down to his right leg and into his right big toe" indicating a neuro-anatomic distribution of pain (Tr. at 1285), with a diagnosis of lumbar radiculopathy (Tr. at 1281, 1285, 1287), and significantly decreased lumbar motion, flexion, and extension (Tr. at 1285, 1287, 1304). He was hospitalized in May 2011 for low back pain with weakness in his right leg causing him to fall. (Tr. at 1311-13.) In addition, the objective medical record chronicles decreased sensation on multiple occasions, including "[d]ecreased sensation in the right L4-L5 nerve root distribution" on June 14, 2011 (Tr. at 1306), and "[d]ecreased sensation in the right L5 nerve root distribution" on August 12, 2011

11

(Tr. at 1304), as well as positive straight-leg raising tests on August 12, 2011 (Tr. at 1304), September 17, 2012 (Tr. at 1285-86), and June 12, 2013 (Tr. at 1277).[8]

The above evidence—none of which is addressed in the administrative decision—clearly belies Defendant's contention that "there is no unresolved conflict of evidence that forecloses meaningful review." (Def.'s Br. at 10.) Moreover, to the extent that Defendant attempts to cite other evidence in the record to support the conclusion that Listing 1.04A does not apply, this Court will not undertake an analysis that is not reflected in the ALJ's decision. See generally SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) ( "[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))). Radford instructs that where, as

---

[8] The fact that Plaintiff arguably exhibited the various requirements of Listing 1.04A at different times throughout the relevant time period has no impact on the listing analysis. In Radford, the Fourth Circuit specifically held that the Listing
> does not contain a requirement governing when symptoms must present in the claimant. Listing 1.04A provides that certain "disorders of the spine" are among the impairments conclusively establishing disability. It requires only "[e]vidence of nerve root compression characterized by"—i.e., distinguished by—the four symptoms. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A; *Merriam Webster's Collegiate Dictionary* 192 (10th ed.1997) ("characteristic"). The use of "and" to connect the four symptoms means that all of the symptoms must be present in the claimant, but the provision does not specify *when* they must be present. And it certainly does not say that they must be present at the same time, *see Merriam Webster's Collegiate Dictionary* 1094 (10th ed.1997) (defining "simultaneous" as "existing or occurring at the same time"), or that they must be present within a certain proximity of one another.

734 F.3d at 293.

here, there is conflicting evidence in the record as to whether the claimant satisfies a Listing, but insufficient analysis or explanation of the issue by the ALJ, remand is required. 734 F.3d at 296.⁹ Here, as in Radford, "a fair amount of evidence" in the record supports Plaintiff's claim, and the ALJ's failure to provide any explanation or analysis as to his step three determination precludes the Court from undertaking meaningful review of the ALJ's step three finding. Without any analysis for this Court to review, remand is required.

In reaching this conclusion, the Court is guided by a recent decision of the Fourth Circuit involving an ALJ's failure to address a specific Listing. Brown v. Colvin, 639 F. App'x 921 (4th Cir. 2016). In that case, the district court noted the ALJ's failure to specifically analyze Listing 4.04, but nevertheless considered the evidence in the record and the ALJ's decision and concluded that the ALJ's "detailed review of Plaintiff's medical history constitutes substantial evidence supporting Plaintiff's failure to satisfy" the elements of the Listing. Brown v. Colvin, No. 1:13–CV–96–GCM, 2014 WL 4666978 (W.D.N.C. Sept. 18, 2014.) However, the Fourth Circuit reversed the district court and held that:

> In explaining his decision at Step Three . . . the ALJ stated only that:
>
>> The medical evidence of record does not establish the presence of objective findings that would meet or equal any impairment listed in the Listing of Impairments as found in Appendix 1, Subpart P of Regulations No. 4. This is consistent [with] the State Agency opinion considering Listing[ ] 4.04 (Ischemic Heart Disease).

---

⁹ Notably, Radford involved some examinations in which the claimant "exhibited no weakness, sensory loss, or limitation of motion" as required by Listing 1.04A, and Radford's physician "opined more than once that [his] pain was inconsistent with his physical findings," and the Fourth Circuit concluded that "[g]iven the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a 'meaningful review' of the finding that Radford did not satisfy" the listing at issue. Id.

13

> We found a substantially similar explanation deficient in *Radford* because it was "devoid of reasoning" and rendered impossible the task of determining whether the ALJ's finding was supported by substantial evidence. 734 F.3d at 295.
>
> The Commissioner contends that, despite the similarity in the cursory explanations provided by the ALJ here and the ALJ in *Radford*, we should not remand for further proceedings because, unlike the medical record in *Radford*, the medical record here clearly establishes that Brown's heart condition does not meet or equal the criteria of Listing 4.04C. We conclude that Brown's medical record is not so one-sided that one could clearly decide, without analysis, that Listing 4.04C is not implicated. **Further, we do not accept Brown's and the Commissioner's invitations to review the medical record *de novo* to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so.** Instead, we remand to avoid engaging in fact-finding "in the first instance" and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review in the event the case returns to us. *Radford*, 734 F.3d at 296.

Brown, 639 F. App'x at 923 (emphasis added). While Brown is unpublished, it is nevertheless persuasive, and provides caution to this Court with respect to any attempt to review the medical record to find facts in the first instance. It is the role of the ALJ, with assistance from medical experts as needed and appropriate, to review the medical record and discover those facts. Here, there is no way for this Court to determine how the Listing analysis was made or the basis for the conclusion that the Listing was not met. In addition, in light of the evidence raised by Plaintiff that was not addressed by the ALJ, the Court concludes as in Brown that the medical evidence related to Plaintiff's back condition "is not so one-sided that one could clearly decide, without analysis" that the Listing is not met. The ALJ's failure to address any of the physical listings in this case, including particularly Listing 1.04, is thus more than a "technical error," and is instead a situation where "the ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a 'meaningful review.'" Radford, 734

F.3d at 296. Therefore, as in Radford and Brown, the appropriate course is to remand the case to the ALJ for further proceedings.

In view of this recommendation, the Court need not address additional issues raised by Plaintiff at this time. See Brown, 639 F. App'x at 923 ("Brown also argues on appeal that the district court erred in concluding that the ALJ properly accorded less than controlling weight to the opinion of one of Brown's treating cardiologists. However, in view of our decision to vacate the decision and remand on Step Three of the sequential analysis, we decline to address this issue.").[10]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner of the Social Security

---

[10] The Court notes that Plaintiff also contends that the ALJ failed to perform a function by function analysis in formulating Plaintiff's RFC. There may be issues in this regard for further consideration on remand. For example, the ALJ's decision does not clearly address Plaintiff's alleged limitations in concentration, persistence and pace. In this regard, the ALJ first found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (Tr. at 23.) However, in the next paragraph, the ALJ states that "[t]he third functional area is concentration, persistence or pace. In this area the claimant has no limitation." (Tr. at 24.) Thus, the decision itself is internally inconsistent. In addition, the ALJ notes that Plaintiff "had a mild stroke in September 2012 and has difficulty concentrating" (Tr. at 25, 27, 68), and the ALJ found that Plaintiff's "status post cerebrovascular accident" was a severe impairment (Tr. at 23, 27). However, the ALJ did not address that impairment further and instead relied on earlier evidence from 2010 and 2011 to conclude that Plaintiff had no limitations in concentration, persistence or pace. (Tr. at 24, 27, 325, 767, 626, 635, 645, 754.) Given the ALJ's internally inconsistent findings and failure to address Plaintiff's alleged limitations in concentration, persistence and pace after September 2012, it appears that there may be additional issues with respect to the ALJ's determination in this case. However, in light of the remand required by Radford, and given that these issues may be further addressed and considered on remand, the Court need not further address Plaintiff's additional contentions at this time.

Administration or Remanding the Cause for a Rehearing [Doc. #8] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 5th day of January, 2017.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge